UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ERIC SHAPIRO, | Civ. 3:12-cv-1358-AC |
| Plaintiff | FINDINGS AND<br>RECOMMENDATION |
| v. | |
| AMERICAN BANK, a Federal Savings,<br>Association, AMERICAN BANK<br>MORTGAGE GROUP, a Maryland<br>Corporation, AMERICAN BANK<br>HOLDING, INC. a Delaware<br>Corporation, | |
| Defendants | |

ACOSTA, Magistrate Judge:

*Pending Motion*

Plaintiff, Eric Shapiro ("Shapiro"), filed an Amended Complaint against American Bank, a Federal Savings Association ("American Bank"), American Bank Mortgage Group, a Maryland Corporation ("American Bank Mortgage"), American Bank Holding, Inc., a Delaware Corporation ("American Bank Holding") (collectively "Defendants"), arising from his employment with American Bank. In his Amended Complaint, Shapiro alleges

a violation of Oregon's Whistleblowing Statute, OR. REV. STAT. § 659A.199, and a claim for discrimination under OR. REV. STAT. § 659A.230, based upon his reporting of criminal conduct. Additionally, Shapiro alleges a common law claim for wrongful discharge. Shapiro seeks both injunctive and monetary relief, including lost wages, unpaid commissions, medical expenses, and pain and suffering.

Defendants have filed a Motion to Dismiss for Improper Venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer this case to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1406(a), arguing the express terms of the forum selection clause contained in Shapiro's employment agreement state:

> This Agreement shall be governed by, construed and interpreted in accordance with laws of the State of Maryland, except as to its laws of conflicts, Employee agrees that he or she will be subject to the jurisdiction of and appear in Maryland federal and state courts in any other jurisdiction. Employee permits the Court in the jurisdiction where he or she worked to enforce a Maryland federal or state court's decision without contest or contradictory claim by Employee.

Defendants contend first, the forum selection clause in the contract in question was not the product of fraud or overreaching, and nothing in the Amended Complaint alleges otherwise. Second, Defendants contend enforcing the forum selection clause is just and reasonable, citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972), where the court held that a non-moving party must demonstrate that litigating in the contractually chosen venue would be so "gravely difficult and inconvenient" as to deprive him of his day in court. Third, Defendants contend there is no reason to believe enforcement of the forum selection clause contained in Shapiro's employment agreement would contravene public policy of the forum.

Shapiro opposes Defendants' Motion to Dismiss, arguing first that the second *Bremen* exception applies to this case. In *M/S Bremen* and its progeny, courts have held forum selection clauses are *prima facie* valid and presumptively enforceable. However, those cases have also set

forth three circumstances where courts are allowed to decline to enforce forum selection clauses where such enforcement would be unfair or unreasonable under the circumstances: (1) if inclusion of the clause was the product of fraud or overreaching; (2) if the party opposing enforcement would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement of the clause would contravene a strong public policy of the forum in which the suit was filed. *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998). Shapiro first contends that the gravity of his current financial circumstances and a chronic medical condition meets the second *Bremen* exception because Shapiro will effectively be denied the ability to proceed with his claims if venue is transferred to Maryland. Second, Shapiro contends the forum selection clause is ambiguous as to the claims to which it applies and the court must interpret it against Defendants.

Oral argument was heard on November 27, 2012, and for the reasons set forth below, Defendants' Motion to Dismiss should be denied.

## Background

Shapiro was hired by the Beaverton, Oregon branch of American Bank on July 26, 2010, to work as a loan officer. (Am. Compl. ¶ 13.) As a loan officer, Shapiro sold new and refinanced home loans. American Bank then immediately sold these loans to other, larger banks. (Am. Compl. ¶ 16.) Shapiro also handled refinancing applications through the Streamlined Loan ("SL") Program, which was operated by the Department of Housing and Urban Development's Federal Housing Administration ("FHA"), and which offered a streamlined mortgage refinancing opportunity to homeowners with existing FHA-insured mortgages. (Am. Compl. ¶ 18.)

The SL program allowed homeowners to refinance at lower rates and with fewer requirements than a traditional refinance. (Am. Compl. ¶ 18.) The application process Shapiro

handled involved his collection of the necessary information about the borrower and submission of the application file to his supervisor, defendant Reid. At a certain point in the process, the borrower would notify Shapiro to "lock in" the interest rate on the loan based on the daily rates. Once the borrower notified Shapiro to lock in the rate, a 30-day rate lock window began running. (Am. Compl. ¶ 19.) The refinancing applications then were submitted for further processing on or about the 20th of every month. If this deadline was missed, borrowers would lose their locked-in interest rate due to the expiration of the 30-day lock window. In addition, American Bank loan officers told borrowers to withhold the mortgage payment on their existing loan for the final month before the refinancing application went through before the SL process wrapped up within the next 30 days. Therefore, if the SL was not submitted for further processing by the 20th of the month, the consequent delay would leave borrowers delinquent on their existing monthly mortgage payment, having not paid for the current month. (Am. Compl. ¶ 20.)

During the months of October and November of 2010, Shapiro processed eight SL applications. Shapiro then submitted those applications to Reid for further processing. Before submitting those applications, each borrower authorized Reid to lock in an interest rate. (Am. Compl. ¶ 22.)

In early November of 2010, Shapiro learned Reid had neither moved forward with the SL applications nor had he locked in the interest rates on these applications as directed by the borrowers. (Am. Compl. ¶ 23.) Reid gave as the reason for holding on to the SL applications was in hopes that par interest rates would fall, which would lead to higher profits for American Bank when it resold the loans to other banks. (Am. Compl. ¶ 24.)

In the middle of November of 2010, par interest rates suddenly rose and the low interest rates customers had approved to be locked in were no longer available. (Am. Compl. ¶ 25.)

When Shapiro allegedly confronted Reid about this, Reid informed Shapiro he still hoped to close the loans by late-December, before the FHA-sponsored SL program ended. Reid still hoped interest rates would fall by the end of the year. (Am. Compl. ¶¶ 26-27.)

At the end of November 2010, Shapiro learned from two of his clients as they went into closings on conventional, non-SL refinance applications, Reid had increased the rate on their loan applications. (Am. Compl. ¶ 29.) Furthermore, at the end of the year, interest rates did not fall and none of the SL applications Reid was holding closed. In addition, as the borrowers had not paid that month's mortgage payment, as directed by American Bank, they were now delinquent on their existing mortgages. (Am. Compl. ¶ 30.)

Allegedly, Reid had increased the rate on the conventional loans as a way to make up for the lost profits on the SL loans. (Am. Compl. ¶ 31.) In addition, Shapiro alleges he lost at least $15,000 in commissions on the loans that failed to close. (Am. Compl. ¶ 33.)

After Shapiro brought his concerns to Reid and to upper-level management of American Bank about Reid's conduct, on or about January 13, 2011, Reid called Shapiro into his office and asked Shapiro why he was "moping around" that day. (Am. Compl. ¶ 34-37.) When Shapiro told Reid it was because of Reid's mishandling of the SL loans, Reid fired Shapiro. (Am. Compl. ¶ 37.) Allegedly, Reid then prepared a false and pre-textual Employee Separation Report. (Am. Compl. ¶ 39.)

### Legal Standard

In a Rule 12(b)(3) motion to dismiss, parties may assert the defense of improper venue by motion prior to filing a responsive pleading. "A defendant over whom personal jurisdiction exists but for whom venue is improper may move for dismissal or transfer under 28 U.S.C. §

FINDINGS AND RECOMMENDATION                5                                    {NDW}

1406(a)." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1175, 1181 (9th Cir. 2004).

Federal law applies to the enforcement and interpretation of forum selection clauses. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). The enforceability of forum selection clauses in employment contracts is controlled by *M/S Bremen*, 407 U.S. at 18. "Because forum selection clauses are presumptively valid, they should be honored 'absent some compelling and countervailing reason.' . . . The party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (internal citations omitted, quoting *M/S Bremen*, 407 U.S. at 12, 15.)

When the enforceability of a forum selection clause is raised in a motion under Rule 12(b)(3) and "controverted facts and evidence [underlie the plaintiff's] attempt to resist the enforcement of the forum selection clause," the Ninth Circuit applies procedural rules analogous to assessing facts when resolving summary judgment motions. *Murphy*, 362 F.3d at 1138. Where no evidentiary hearing is held and no explicit findings of fact are made, then "fact issues pertinent to the enforceability of the forum selection clause are to be viewed in the light most favorable to . . . the non-moving party." *Id.* at 1140. If the facts asserted by the non-movant "are sufficient to preclude enforcement of the forum selection clause," then the Rule 12(b)(3) motion must be denied until disputed factual issues are resolved. *Id.* Alternatively, the trial court may hold an evidentiary hearing on any disputed facts and has the discretion to decide the scope and method of any such hearing. *Id.* at 1139.

*Discussion*

In its Motion to Dismiss for Improper Venue, pursuant to Rule 12(b)(3), Defendants argue this case should be dismissed or, in the alternative, transferred to the District Court of Maryland based on the forum selection clause in Shapiro's employment contract. Shapiro contends the forum selection clause in his employment contract is ambiguous regarding the claims it encompasses. (Pl.'s Opp. 5.) Additionally, Shapiro argues the forum selection clause should not be enforced and his case should not be transferred to Maryland, because he would be unable to travel to Maryland due to his financial circumstances and health problems, and this would violate the second *Bremen* exception and deprive Shapiro of his day in court. (Pl.'s Opp. 6.)

Before considering the question of whether Shapiro can meet one of the exceptions in *Bremen* and its progeny, however, the court must first determine the threshold question of whether the employment contract covers Shapiro's claims alleged in this case.    In *Manetti/Farrow v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988), the court considered when a forum selection clause applied to tort claims: "whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contracts." In *Manetti/Farrow*, plaintiffs, the exclusive U.S. distributor of the Gucci Accessory Collection, brought suit in the United States District Court, Northern District of California against Gucci America, Inc. and others for conspiracy to interfere with contractual relations, conspiracy to interfere with prospective economic advantage, tortious interference with contractual relations, tortious interference with prospective economic advantage, breach of implied covenant of good faith and fair dealing, and unfair trade practice. Gucci America filed a Motion to Dismiss for Improper Venue, arguing the parties' forum selection clause required

them to litigate their dispute in Florence, Italy. The Ninth Circuit found "because the tort causes of action alleged by Manetti-Farrow relate to 'the central conflict over the interpretation' of the contract, they are within the scope of the forum selection clause." *Id.*

The District of Oregon also has addressed the scope of forum selection clauses as applied to a plaintiff's claims. In *Hebe v. Seagrave Fire Apparatus, LLC*, No. CV 07-155 AS, 2007 WL 1541741, at *2 (D. Or. May 18, 2007), the court cited *Manetti/Farrow* in finding that "[a] forum selection clause applies to a claim if its litigation requires interpretation of the contract containing the clause." *Id.* In *Hebe*, James Hebe brought action against Seagrave Fire Apparatus, LLC for unpaid wages, other compensation, and statutory penalty wages, or in the alternative damages for breach of contract. Seagrave filed a motion to dismiss the action for improper venue, asserting the forum selection clause in a separate limited partnership agreement ("LPA") required this action be brought in Delaware. The employment contract out of which Hebe's claims arose did not contain such a forum selection clause. *Id.* at *1.

Seagrave argued the limited partnership agreement forum selection clause applied to Hebe's claims because it covered any action by a Partner against any Affiliate of the Partnership. Hebe responded that Seagrave was not an Affiliate under the LPA, and therefore the forum selection clause in the LPA did not apply to his claims. The court agreed with Hebe and found "Seagrave is not an Affiliate under the LPA, and that Hebe's claims do not relate to the LPA, under *Manetti-Farrow*." *Id.*

Additionally, the court in *Hebe* stated: "If the applicability of a forum selection clause is unclear, Ninth Circuit courts consider whether 'the claims alleged in the complaint *relate* to the interpretation of the contract.'" *Id.* at *3 (quoting *Manetti-Farrow*, 858 F.2d at 514) (italics in original). Relying on the language in *Manetti-Farrow*, the court in *Hebe* determined: "Claims

relate to the contract if they 'cannot be adjudicated without analyzing whether the parties were in compliance with the contract.'" *Id.* (quoting *Manetti-Farrow*, 858 F.2d at 514).   The court concluded "[t]o the extent that the FSC's applicability to Hebe's claims is not foreclosed by the LPA itself, the court finds that Hebe's claims do not relate to the LPA." Thus, the forum selection clause in the LPA did not apply to Hebe's claims and the court denied Seagrave's motion to dismiss. *Id.* at *4-5.

Similarly, in *Androustakos v. M/V Psara*, No. 02-1173-KI, 2004 WL 1305802, at *1 (D. Or. Jan. 22, 2004) this court applied *Manetti-Farrow* to determine the scope of a forum selection clause.  In *Androutsakos*, the plaintiff brought action for negligence and unseaworthiness in the District of Oregon. *Id.*  The defendant filed a motion to dismiss arguing the forum selection clause in the plaintiff's individual employment contract required this action be brought in the Court of Athens, Greece. *Id.* at *5. The plaintiff argued the forum selection clause did not apply because his personal injury claims did not relate to the terms of his employment contract. Specifically a determination of whether the defendants were liable for the plaintiff's injuries did not depend on any rights and duties enumerated in the employment contract.  The defendant argued the language in the employment contract was broader than plaintiff claimed. The court in *Androutsakos* found "Because the resolution of plaintiff's claims against the Psara defendants does not involve analyzing in any way whether the parties were in compliance with the contract the forum selection clause does not apply." *Id.* at*6

The employment contract in this case is a non-compete/non-disclosure agreement. Specifically, the contract outlines the duties and responsibilities of the employee, specifies that employment is at-will, explains compensation, outlines restrictive covenants of non-competition, prohibits disclosure of trade secrets and other confidential information and intellectual property,

describes the right to injunction, recites the reasonableness of the restrictions, preserves the severability and enforceability of the contract, and defines the burden and benefit of the agreement. (Michael P. Baines Decl. Ex. 1, Aug. 2, 2012.) The contract also contains the forum selection clause, identifies where notices should be sent, recites the parties' waiver of trial by jury, emphasizes the necessity of the employee to keep an up-to-date drivers license and auto insurance, states that all equipment and materials are property of the employer, affirms that the agreement constitutes the entirety of the parties' agreement, notes that all headings and captions in the contract are for convenience only, and declares that Sections 4-16 shall survive the termination of this agreement for any reason.

Paragraph 11 sets forth the forum selection clause and states: "This *Agreement* shall be governed by, construed and interpreted in accordance with the laws of Maryland . . ." (Baynes Dec. Ex. 1 at 5 (emphasis added).) Additionally, the Agreement requires Shapiro to "be subject to the jurisdiction of and appear in Maryland . . . courts . . ." (Baynes Decl. Ex.1 at 5.)  Missing from the agreement here is the more inclusive language often found in employment contracts that covers all claims arising in the scope of employment, without qualification. Thus, the express terms of the employment contract limit the scope of the governing law provision to the Agreement.  In fact, the language in the forum selection clause here is as restrictive as instances in which the parties agree to litigate in a particular forum claims "arising under" the agreement. *See Mediterranean Enter., Inc. v. Ssanyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) ("We have no difficulty finding that 'arising under' is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself.") Neither the express provisions of Shapiro's employment contract nor the implementing language of the forum selection clause contemplate Shapiro's claims here.

Defendants here rely on *Slater v. Energy Services Group International Incorporated*, 634 F.3d 1326 (11th Cir. 2011), to argue that courts should enforce broadly-worded forum selection clauses to dismiss statutory causes of action arising form the employment relationship. (Def. Rep. at 9) In *Slater*, the plaintiff filed an action against her employer under Title VII, the Florida Civil Rights Act, and Florida Whistleblower Act. The forum selection clause in *Slater* stated "'The parties agree that all claims or causes of action relating to or arising from this Agreement shall be brought in a court in the City of Richmond, Virginia.'" *Id.* at 1328-29. The plaintiff argued the employment agreement's forum selection clause, which was silent about statutory-based claims, did not apply to her case. *Id.* at 1330. The Eleventh Circuit, however, found the parties intended the employment contract to govern the entirety of the employment relationship and thus, the statutory-based claims fell within the scope of the forum selection clause. *Id.* at 1331.

*Slater* can be distinguished from the case at hand, however, because the forum selection clause in the employment contract in *Slater* was much broader in scope than the forum selection clause in the employment contract in this case. *Id.* at 1329. Because the forum selection clause in the contract in question in *Slater* governed the entirety of the employment relationship between the plaintiff and her employer, the Eleventh Circuit found "the clause is expressly applicable to 'all claims or causes of action relating to or arising from [the employment agreement].' This includes all claims arising 'directly or indirectly from the relationship by the contract." *Id.* at 1331 (citation omitted). This language is much broader than the language used in the forum selection clause here, which expressly governs only claims arising from the employment contract, and is silent as to claims relating to the contract.

Rather, this case is more similar to *Hebe* and *Androusatkos*. Shapiro is alleging whistleblowing and wrongful termination claims. Following the *Manetti-Farrow* analysis of "whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract," the court must examine whether the resolution of Shapiro's claims requires the court to even consider the contract. The employment contract is a business agreement, and does not mention employment claims generally or the specific statutory and common law claims of whistleblowing, discrimination and wrongful discharge brought by Shapiro. Thus, the contract would apply to disputes regarding restrictive covenants not to compete, disclosure of trade secrets and other confidential information, and ownership of intellectual property. Those terms need not be interpreted to resolve the dispute here regarding whether Shapiro was wrongfully terminated for reporting the conduct of his supervisor. Shapiro's claims here are neither covered by nor related to the forum selection clause in the agreement.[1]

## Conclusion

For the reason stated, Defendants' Motion to Dismiss (#4) should be denied.

---

[1] At oral argument there was some question whether Shapiro's request for damages in the form of unpaid commissions would trigger the forum selection clause. Even assuming Shapiro's request for commissions owed implicates the forum selection clause here, defendants' request to transfer venue should be denied. *See James v. UMG Recordings*, Nos. C 11-1613 SI, C 11-2431 SI, 2011 WL 5192476, at *2 (N.D. Cal. Nov. 1, 2011) ("unreasonable to enforce a forum selection clause that applies to some but not all of the plaintiff's claims")

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 17, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after served with a copy of the objections. When this response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 2nd day of May, 2013

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION          13          {NDW}