IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ERIC SHAPIRO,                                                          3:12-cv-1358-AC

                                    Plaintiff,              OPINION AND ORDER

                    v.

AMERICAN BANK [FSB], a Federal Savings
Association, AMERICAN BANK
MORTGAGE GROUP, a Maryland corporation,
AMERICAN BANK HOLDING, INC., a
Delaware corporation,

                                    Defendants.
_____

ACOSTA, Magistrate Judge:

*Pending Motion*

     Eric Shapiro ("Shapiro") filed an Amended Complaint against American Bank [FSB],

American Bank Mortgage Group,[1] and American Bank Holding, Inc. (collectively "American

_____

     [1]American Bank Mortgage Group is a division of American Bank FSB, but is not a
distinct corporate entity.

1 - OPINION AND ORDER

Bank"), arising from his employment with American Bank. In his Amended Complaint, Shapiro alleges violations of Oregon's whistleblower statutes, OR. REV. STAT. § 659A.l99 and § 659A.230, and an Oregon common law claim for wrongful discharge. Shapiro seeks both injunctive and monetary relief, including lost wages, unpaid commissions, medical expenses, and pain and suffering.

American Bank filed a Motion for Judgment on the Pleadings pursuant to FED R. CIV. P. 12(c), seeking dismissal of Shapiro's wrongful termination claim on the ground it is barred because his statutory whistleblower claims provide an adequate statutory remedy for his claimed injury and damages. (Defs.' Mem. Dismiss 2.) Shapiro opposes the motion, arguing his wrongful discharge claim is viable "[b]ased upon the history of the law and plain language of the statutes at issue . . . ." (Pl.'s Resp. 1.) Oral argument was heard on November 18, 2013, and for the reasons that follow, American Bank's Motion for Judgment on the Pleadings is granted.

*Background*

The Beaverton, Oregon, branch of American Bank hired Shapiro on July 26, 2010, to work as a loan officer. (Am. Compl. ¶ 13.) As a loan officer, Shapiro sold new and refinanced home loans. American Bank immediately sold these loans to other, larger banks. (Am. Compl. ¶ 16.) The purchasing banks paid varying amounts for the resold loans, according to a fluctuating rate that changed daily and referred to as the Yield Spread Premium ("YSP"). (Am. Compl. ¶ 16.) The YSP represents the difference between the par rate given to the originating bank, in this case American Bank, and the final rate provided to the borrower under the terms of the mortgage. The amount American Bank earned when it sold its mortgages to other banks was increased with a higher YSP value. (Am. Compl. ¶ 17.)

2 - OPINION AND ORDER

Shapiro also handled refinancing applications through the Streamlined Loan ("SL") program, operated by the Department of Housing and Urban Development's Federal Housing Administration ("FHA"), and which offered a streamlined mortgage refinancing opportunity to homeowners with existing FHA-insured mortgages. (Am. Compl. ¶ 18.)  The SL program allowed homeowners to refinance at lower rates and with fewer requirements than a traditional refinance.  (Am. Compl. ¶ 18.)  During the application process, each customer notified Shapiro when they were prepared to "lock in" the loan's interest rate based on the daily rate.  Once the borrower notified Shapiro to lock in the rate, a 30-day rate lock window began running.  (Am. Compl. ¶ 19.)

The refinancing applications were submitted for processing around the 20th of every month. If this deadline was missed, borrowers would lose their locked-in interest rate due to the expiration of the 30-day lock window.  (Am. Compl. ¶ 20.)  In addition, American Bank loan officers told borrowers to withhold the mortgage payment on their existing loan for the final month before the refinancing application went through, in anticipation the SL process would be complete within the next 30 days. Therefore, if the SL was not submitted for processing by the 20th of the month, the consequent delay would leave borrowers delinquent on their existing monthly mortgage payment, having not paid for the current month.  (Am. Compl. ¶ 20.)

During the months of October and November of 2010, Shapiro processed eight SL applications.  Shapiro gave his customers' applications to his supervisor, Kevin Reid, to submit for further processing. (Am. Compl. ¶ 22.)  Reid did not submit these applications or lock in the requested interest rates in the hope interest rates would fall leading to higher profits when American Bank resold the loans. (Am. Compl. ¶¶ 23-24.)  Unfortunately, rather than decreasing, interest rates increased. (Am. Compl. ¶ 25.)  As a result, the customers' requested interest rates were no longer

available, and their loans could no longer be refinanced at the locked-in rate. (Am. Compl. ¶¶ 25, 32.)

In the middle of November of 2010, par interest rates suddenly rose, making unavailable the low interest rates customers had approved for "lock in." (Am. Compl. ¶ 25.) When Shapiro confronted Reid about this, Reid informed Shapiro he still hoped to close the loans by late-December, before the FHA-sponsored SL program ended. Reid hoped interest rates would fall by the end of the year. (Am. Compl. ¶¶ 26-27.)

At the end of November 2010, Shapiro learned from two of his clients that Reid had increased the rate on their loan applications. (Am. Compl. ¶ 29.) Further, at the end of the year, interest rates did not fall and none of the SL applications Reid was holding closed. In addition, as the borrowers had not paid that month's mortgage payment, as directed by American Bank, they were now delinquent on their existing mortgages. (Am. Compl. ¶ 30.)

Shapiro spoke with Reid and upper management and accused Reid of acting unlawfully by failing to timely close the loans. (Am. Compl. ¶ 34.) In a good faith belief Reid's conduct violated state or federal laws, Shapiro spoke to officials with the Federal Office of Thrift Supervision, now Office of the Comptroller of the Currency, about Reid's misconduct and informed several co-workers about his intentions to file a formal complaint. (Am. Compl. ¶ 36.)

On or about January 13, 2011, after Shapiro brought his concerns to Reid and to upper-level management of American Bank, Reid called Shapiro into his office and asked Shapiro why he was "moping around" that day. (Am. Compl. ¶¶ 34-37.) When Shapiro responded to Reid it was because of Reid's mishandling of the SL loans, Reid fired Shapiro. (Am. Compl. ¶ 37.) Reid then prepared

a false and pre-textual Employee Separation Report. (Am. Compl. ¶ 39.) Shapiro filed the present action against American Bank.

*Legal Standard*

A motion for judgment on the pleadings is governed by Rule 12(c), which states, "[a]fter the pleadings are closed -- but early enough not to delay the trial -- a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c) (2013). The purpose of a Rule 12(c) motion is to challenge the sufficiency of the opposing party's pleadings, and the court applies the same standard as a motion to dismiss under Rule 12(b)(6). *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012). Accordingly, judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). If matters outside the pleadings are considered, the motion shall be treated as one for summary judgment. FED. R. CIV. P. 12(d) (2013).

*Discussion*

In Count III of his Amended Complaint, Shapiro alleges a claim for wrongful discharge under Oregon law. According to Shapiro, American Bank terminated his employment in retaliation for his "reporting and opposition to unlawful process of mortgage applications and/or breaches of the fiduciary duties owed to the clients of American Bank." (Am. Compl. ¶ 61.) Shapiro alleges the termination interfered with his "pursuit of important societal obligation[s] as well as important duties related to his role as an employee" in certain enumerated ways. (Am. Compl. ¶ 61). Relevant here, Shapiro further alleges he "does not have available to him adequate remedies under his statutory

claims for relief and as a result is entitled to such remedies as exceed those awarded under other claims." (Am. Compl. ¶ 62.)

American Bank seeks an entry of judgment against this claim on the ground it is barred because the allegations set forth in Shapiro's wrongful discharge claim are the same allegations he relies upon in support of his statutory whistleblower claims. (Defs.' Mem. Dismiss 2 (*comparing* Pl.'s Am. Compl. ¶ 61 *with* ¶¶ 45, 46 & 54).) American Bank insists Shapiro's statutory claims provide an adequate remedy for his claimed injury and damages and, therefore, the wrongful discharge claim is precluded. (Defs.' Mem. Dismiss 2.)

In Oregon, the tort of wrongful discharge is designed to "serve as a narrow exception to the at-will employment doctrine in limited circumstances where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct." *Draper v. Astoria Sch. Dist. No. 1C*, 995 F. Supp. 1122, 1127 (D. Or. 1998).[2] In fact, the court in *Draper* determined a claim for wrongful discharge under Oregon law was "never was intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question was unacceptable and *no other remedy was available.*" *Draper*, 995 F. Supp. at 1128 (emphasis added).

As a result, the common law claim for wrongful discharge is recognized only where an employee is terminated for: (1) performing a public duty or fulfilling a societal obligation, *see, e.g., Delaney v. Taco Time Int'l*, 297 Or. 10 (1984) (refusing to sign a false report defaming a co-worker);

---

[2] The decision in *Draper* also addressed the exemption from a damages cap for claims under the whistleblower law. That portion of the court's holding was abrogated in *Rabkin v. Oregon Health Sciences Univ.*, 350 F.3d 967, 972 (9th Cir. 2003).

*McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or. App. 107 (1984) (reporting patient abuse at a nursing home,); *Nees v. Hocks*, 272 Or. 210 (1975) (serving on jury duty)); or (2) exercising an employment related right of an important public interest, *see, e.g., Holien v. Sears, Roebuck & Co.*, 298 Or. 76 (1984) (resisting unlawful sexual harassment); *Brown v. Transcon Lines*, 284 Or. 597 (1978) (filing a workers' compensation claim).

Moreover, this additional remedy is not available "if (1) an existing remedy adequately protects the public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that remedy to be adequate)." *Draper*, 995 F. Supp. at 1130-31. "The underlying purpose of that tort in this state is not to vindicate individual interests of the employee by assuring that he or she receives the maximum possible recovery, but rather to protect important public policies by punishing conduct that thwarts those interests." *Id.* at 1130. Thus, in this District "if a statutory remedy exists, a common law wrongful discharge claim based on the same conduct is precluded." *Whitley v. City of Portland*, 654 F. Supp. 2d 1194, 1224 (D. Or. 2009) (*citing Reid v. Evergreen Aviation Ground Logistics Enter. Inc.*, No. 07-cv-1641-AC, 2009 WL 136019, at *16 (D. Or. Jan. 20, 2009)).

With these principles in mind, the court must decide whether Shapiro's statutory claims under § 659A.199 and § 659A.230 adequately protect the public interest in question *or* whether the Oregon legislature abrogated the claim for wrongful discharge under the circumstances of this case. The court notes either basis will preclude Shapiro's claim here. *See, e.g., Reid*, 2009 WL 136019, at *20 ("the presence of an adequate statutory remedy precludes a common law wrongful discharge claim based on the same conduct"); *Hull v. Ivey Imaging LLC*, No. 08-cv-744-HU, 2008 WL 5071100, at *2 (D. Or. Nov. 21, 2008) ("Federal courts in this district have continued applying a

disjunctive test."); *Adams v. Home Depot USA, Inc.*, No. 05-cv-798-ST, 2007 WL 4565163, *29 (D. Or. Dec. 19, 2007) ("this court continues to require either a show of adequate statutory remedies or a specific legislative intent to abrogate the common law, but not both").

Turning to Shapiro's statutory whistleblower claims, § 659A.199 makes it "an unlawful employment practice for an employer to . . . retaliate against an employee . . . for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation[,]" and § 659.230 provides the same protection when an employee is reporting crimes.  OR. REV. STAT. §§ 659A.199(1) and 659A.230(1).  This court previously determined § 659A.199 provided an "adequate (if not better) remedy" than plaintiff's wrongful discharge claim.  *Duran v. Window Prods, Inc.*, No. 10-cv-125-ST, 2010 WL 6420572, at *5 (Dec. 22, 2010); *see also Franklin v. Clarke*, No. 10-cv-382-CL, 2011 WL 4024638, at *11 (D. Or. Sept. 09, 2011) (plaintiff's wrongful discharge claim precluded due to adequate remedy under Oregon whistleblower statutes).  The court in *Duran* noted the parties agreed the statute allows recovery of the same damages available for a wrongful discharge claim and also allows an award of attorney fees.  *Id.*  Despite this court's decision in *Duran* and subsequently, *Franklin*, Shapiro opposes American Bank's request for judgment on his wrongful discharge claim.

Shapiro argues American Bank's reliance on this court's prior decisions in "*Reid, Whitley,* and *Gladfelder* are inapposite because each of those cases governs different statutes from those at issue here." (Pl.'s Resp. 4.) As set forth above, this court previously determined the precise statutes at issue here provide an adequate remedy for a plaintiff's wrongful discharge claim.  *See, e.g., Duran*, 2010 WL 6420572, at *5; *Franklin,*, 2011 WL 4024638, at *11.  Additionally, Shapiro does not challenge American Bank's assertion that available remedies under the alleged statutory

whistleblower claims are equal to and perhaps exceed those available under a common law tort for wrongful discharge. In fact, at oral argument, Shapiro conceded Oregon's statutory whistleblower claims provide adequate remedies for the conduct alleged in his Amended Complaint.

Nevertheless, Shapiro contends he "may be denied a legal remedy should he be unable to satisfy the requirements under his whistleblower claims." As such, Shapiro maintains dismissal of his common law wrongful discharge claim at this stage of the proceedings is premature. (Pl.'s Resp. 3.) In his Amended Complaint, Shapiro alleges:

> In late December 2010, Reid and an upper-level management employee with American Bank held a closed-door meeting with plaintiff and his co-workers to discuss this situation. During this meeting, plaintiff challenged Reid's failure to close the loans in a timely manner, and accused Reid of acting unlawfully.
>
> . . . .
>
> Also on or about January 11, 2011, plaintiff was actively preparing a detailed report of Reid's unlawful conduct to forward to the appropriate authorities. In preparing his report, plaintiff spoke to officials with the federal Office of Thrift Supervision (now the Office of the Comptroller of the Currency) about Reid's misconduct and how he could best document and proceed with his complaint. Plaintiff informed several of his co-workers about his intentions to file a formal complaint.
>
> . . . .
>
> American Bank terminated plaintiff's employment in retaliation for his reporting of, and pattern of opposition to, what he believed in good faith were violations of state and/or federal laws related to mortgage lending, mortgage brokerage licensing, and/or criminal fraud.

(Am. Compl. ¶¶ 34, 36, 38.) Shapiro sets forth three claims for relief, two statutory and one common law, all grounded in these same allegations.

Shapiro insists dismissal at this stage of the proceedings is premature and should be delayed until a determination is made on whether Shapiro "can survive summary judgment on his

whistleblower claims." (Pl.'s Opp. 14-15.)    Specifically, Shapiro argues in the event American

Bank prevails on an argument that he failed to report as required by the statute his:

> actions nonetheless included pursing a right related to his role as an employee, which
> was one of important societal interest, and he should therefore be allowed a wrongful
> discharge claim. Information obtained through discovery will illuminate whether
> plaintiff 's level of reporting before his was fired was sufficient to meet the standard
> under ORS 659A.199 and ORS 659A.230.

(Pl.'s Opp. 14.)

At oral argument, Shapiro explained the elements for the statutory whistleblower claims are

arguably more narrow than what is required to prevail on a wrongful discharge claim grounded in

an important societal interest.  In essence, Shapiro argues the statutory whistleblower claims are

inadequate because the elements of those claims are too restrictive based upon the facts as they are

being developed.  This argument may be more persuasive if the posture of this case were such that

Shapiro had alleged only a wrongful discharge claim and American Bank was attempting to have that

claim dismissed based upon the adequate remedies provided by Oregon's statutory whistleblower

claims.  In that instance, Shapiro's position that the statute is too restrictive and excludes the conduct

in this case might prevail. *See, e.g., Huff v. City of Portland*, No. 05-cv-1831-AA, 2006 WL 572152,

at *3 (D. Or. 2006) (no adequate remedy under § 1983 against the City "presumably because the

facts alleged do not support a viable § 1983 claim against it") *Shultz v. Multnomah County*, No. 08-

cv-886-BR, 2009 WL 1476689, at *12 (D. Or. May 27, 2009) (no adequate remedy under § 1983

because County could never be liable to plaintiff on a theory of *respondeat superior* for the alleged

misconduct of nonpolicymakers).

Presently, however, the allegations in Shapiro's Amended Complaint set forth the necessary

elements for the statutory whistleblower claims.  Indeed, American Bank acknowledges in its Reply,

assuming the truth of these allegations, Shapiro has stated statutory whistleblower claims. (Defs.'
Reply 6 ("Having stated statutory whistleblower claims, the common law claims must be dismissed
now, even if Plaintiff's statutory claims turn out to have no factual support."); *see also* Defs.' Reply
5 ("If true, Plaintiff does not need the common law claim, and it must be dismissed because he has
an adequate statutory remedy.").)  Thus, under the current posture of this litigation, Shapiro's
statutory claims are ready to be litigated and decided on the merits.  Yet, Shapiro asks the court first
to determine the merits of those statutory claims, most likely at summary judgment, and then decide
whether he can proceed with the wrongful discharge claim.  That is simply not the law in this
District.

In fact, Judge Stewart rejected a similar argument in *Minter v. Multnomah County*, No. 01-
cv-352-ST, 2002 WL 31496404 (D. Or. May 10, 2002).  In response to plaintiff's argument the
wrongful discharge claim should be precluded only if she  prevails on the merits one of her two
statutory claims that afforded the same potential remedies, Judge Stewart explained:

> The problem with Minter's approach is that it first requires a court to rule on the
> merits of the other claims to determine if she has won or lost them, making it
> impossible to dismiss a wrongful discharge claim short of summary judgment or trial.
> Contrary to Minter's approach, inquiring into the adequacy of remedies as a matter
> of law does not first require a determination as to the merits of the claims.  Instead,
> the only inquiry is whether an alternative claim, *if proven*, provides an adequate
> remedy.

*Minter*, 2002 WL 31496404, at *14 (emphasis added).

On numerous occasions subsequent to Judge Stewart's ruling in *Minter*, judges in this
District have concluded the question of whether a statutory claim provides an adequate remedy is
unrelated to the merits of the claim. *See, e.g., Baynton v. Watt*, 411 F. Supp. 2d 1223, 1225 (D. Or.
2006) ("the analysis does not require the court to determine the merits of the claim; rather the court

11 - OPINION AND ORDER

evaluates whether the claim, if proven, provides an adequate remedy"); *Walters v. Roll'n Oilfield Industries, Ltd.*, No. 06-cv-1502-TC, 2008 WL 450382, at *4 (D. Or. Feb. 15, 2008) (*accord Minter*); *Henry v. Portland Development Comm'n*, No. 06-cv-712-HU, 2006 WL 4008709, at *8 (D. Or. Oct. 18, 2006) (*accord Minter* and *Baynton*); *Howard v. City of Coos Bay*, No. 09-cv-6257-AA, 2011 WL 899619, at *11 (D. Or. March 14, 2011) (*accord Baynton* and *Minter*); *see also Carlton v. Marion County*, No. 03-cv-6202-AA, 2004 WL 1442598, at *4 (D. Or. Feb. 19, 2004) (voluntary withdrawal of § 1983 claim did not render remedy inadequate).

The fact Shapiro may not ultimately prevail either on summary judgment or at trial on his statutory whistleblower claims does not provide a legal reason to move forward with all three claims. The nature of the common-law tort for wrongful discharge is to fill a gap for plaintiffs, not provide a safety net. Shapiro elected these statutory claims, he concedes the remedies are adequate, and it is now incumbent upon him to prove them. The consequent dismissal of his common law claim does not lie dormant pending his success on the merits. Under the circumstances, dismissal of the wrongful discharge claim at this stage of the proceedings is permitted. *See, e.g., Gladfelder v. Pacific Courier Servs., LLC*, No. 12-cv-2161-SI, 2013 WL 2318840 (D. Or. May 28, 2013) (granting motion to dismiss wrongful discharge claim based on adequate available statutory remedy); *see also, Baynton*, 411 F. Supp. 2d 1223 (same).

Next, Shapiro insists he "is entitled to his wrongful discharge claim under Oregon law." (Pl.'s Resp. 4.) According to Shapiro, American Bank's alleged conduct – terminating Shapiro's employment "for his good faith efforts to protect borrowers and to exercise his duty to follow the law – is exactly the type of conduct . . . the wrongful discharge tort was intended to address." (Pl.'s Resp. 6.) Shapiro contends dismissal of his wrongful discharge claim will deprive him of an

"opportunity to present [American Bank's] conduct to the jury" to decide whether [American Bank]
acted with a 'socially undesirable motive.'" (Pl.'s Resp. 6 (citing *Nees*, 272 Or. at 218).

The court does not consider in isolation whether Shapiro may be able to state a claim for
wrongful discharge under Oregon law.  Rather, the issue before the court is whether the statutory
whistleblower claims, elected and pleaded by Shapiro, provide an adequate remedy for the same
conduct challenged by his common-law tort claim.  Shapiro does not dispute that all of the
challenged conduct relied upon for his common law wrongful discharge claim is the same conduct
alleged in support of his statutory whistleblower claims.  As such, in the event Shapiro's statutory
claims reach a jury, that jury will have the opportunity to evaluate whether American Bank
discharged Shapiro "for his good faith efforts to protect borrowers and to exercise his duty to follow
the law." (Pl.'s Resp. 6.)  Thus, Shapiro will not be deprived of his chance "to present [American
Bank's] conduct to the jury." (Pl.'s Resp. 6.)

Shapiro next urges this court to consider both the plain language and the legislative intent
of § 659A.199 and § 659A.230, as it is clear the Oregon Legislature's intent was to allow plaintiffs
to pursue wrongful discharge claims in these circumstances. (Pl.'s Resp. 6.)  Shapiro maintains the
"text of the whistle blower statutes unambiguously states . . . the statutory remedy is not an exclusive
remedy." (Pl.'s Resp. 7.)  Specifically, both § 659A.199(2) and § 659A.230(3) provide: "The
remedies provided by this chapter are in addition to any common law remedy or other remedy that
may be available to an employee for the conduct constituting a violation of this section." OR. REV.
STAT. §§ 659A.199(2) and 659A.230(3).

Neither the plain language of the statute nor the legislative history are relevant to the court's
analysis here.  In *Reid*, this court carefully considered whether "the test for exclusivity of a statutory

13 - OPINION AND ORDER

remedy in wrongful termination cases is conjunctive, requiring both adequacy of statutory remedy and legislative intent to preclude a common law claim for wrongful discharge, rather than disjunctive, where the presence of either one of these elements is sufficient to preclude a common law claim for wrongful discharge." 2009 WL 136019, at *18. The court recognized two grounds for declining to find both adequacy of the statutory remedy and legislative intent were necessary to bar a wrongful discharge claim. First, the Oregon Supreme Court has not ruled on this precise issue and its current holdings arguably support the court's interpretation here; namely, an adequate statutory remedy alone is sufficient to preclude the claim. *See id.* at 17-18 ("*Walsh* never discussed the legislative intent of the statutes at issue but instead focused only on the adequacy of the remedy that the statutes provided." (citing *Walsh v. Consolidated Freightways*, 278 Or. 347, 351-52 (1977)). Second, the court in *Reid* determined the additional requirement for clear legislative intent:

> necessarily expands the tort of wrongful discharge into areas where legislation already has given the claimant an adequate remedy and the public's interest is protected. Such expansion is clearly at odds with the tort's original construct, to fill a remedial gap where a discharge would be left unvindicated . . . and its original purpose to serve as a narrow exception to the at-will employment doctrine in certain limited circumstances where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct.

*Id.* at 18 (quotations and citations omitted). The reasoning and holding in *Reid* have subsequently been relied upon by this court numerous times to dismiss a plaintiff's wrongful discharge claim without consideration of legislative intent. *See, e.g., Duran v. Windows Prod. Inc.*, No. 07-cv-125-ST, 2011 WL 1261190, at *2 (D. Or. Mar. 29, 2011) (*Duran II*) (relying on analysis in *Reid*, the court adopts the disjunctive test); *Neighhorn v Quest Health Care*, 870 F. Supp. 2d 1069, 1106 (D. Or. 2012) (common law wrongful discharge claim was precluded by available adequate statutory

14 - OPINION AND ORDER

remedy; conjunctive test is "inconsistent with Oregon Supreme Court precedent and an unnecessary expansion of the tort of wrongful discharge."); *see also Adams*, 2007 WL 4565163, at *29 ("this court continues to require *either* a show of adequate statutory remedies *or* a specific legislative intent to abrogate the common law, but not both.") (emphasis in original); *Hull*, 2008 WL 5071100, at *2-3 (*accord*).

In sum, existing precedent dictates the court must dismiss Shapiro's common law wrongful discharge claim because he has adequate statutory remedies available under § 659A.199 and § 659A.230. Shapiro elected and pleaded the statutory whistleblower claims and those claims provide an adequate remedy for the claimed injury and damages in this case. Neither the fact Shapiro may be unable to prevail on his statutory claims, nor the language of those statutes or the legislative history alter this conclusion. As detailed above, in this District, a wrongful discharge claim is precluded upon a finding by the court that an adequate statutory remedy exists, regardless of the likelihood of success on the merits, statutory language or legislative intent.

## Conclusion

Based upon the foregoing, American Bank's Motion for Judgment on the Pleadings (doc. #30) is GRANTED. Shapiro's Third Claim for Relief (Wrongful Discharge) is DISMISSED, without prejudice.

IT IS SO ORDERED

DATED this 21st day of November 2013

_____
JOHN V. ACOSTA
United States Magistrate Judge

15 - OPINION AND ORDER